UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LAGESTEE-MULDER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | 09 C 7793 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| CONSOLIDATED INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Lagestee-Mulder, Inc., filed this diversity suit against Defendant Consolidated Insurance Company, alleging that Consolidated breached its duty to defend Lagestee in a state court action brought by Crown Centre LLC, the owner of a new commercial building on which Lagestee had served as general contractor. *Crown Centre LLC v. The Shalvis Group P.C.*, No. 07 L 710 (Cir. Ct. Will Cnty., Ill.). Lagestee filed a third-party complaint in state court seeking indemnification and/or contribution from its subcontractor, Frontrunner Glass & Metal Inc., which had installed the building's windows and doors. Frontrunner was a named insured under a Consolidated policy, and Lagestee was an additional insured. Lagestee and Frontrunner both tendered their respective defenses to Consolidated. Consolidated accepted Frontrunner's tender under a reservation of rights; Consolidated did not immediately respond to Lagestee, and it ultimately denied coverage after Lagestee settled with Crown. The parties here have filed cross-motions for summary judgment. There are no material factual disputes requiring a trial. Because Consolidated had no duty to defend Lagestee, Consolidated's motion is granted and Lagestee's motion is denied.

The parties agree that Illinois law governs. The Seventh Circuit recently summarized Illinois law as it pertains to the interpretation of insurance policies:

> In Illinois, insurance policies are contracts; the general rules governing the interpretation and construction of contracts govern the interpretation and construction of insurance policies. Illinois courts aim to ascertain and give effect to the intention of the parties, as expressed in the policy language, so long as doing so does not contravene public policy. In doing so, they read the policy as a whole and consider the type of insurance purchased, the risks involved, and the overall purpose of the contract. If the policy language is unambiguous, courts apply it as written. Policy terms that limit an insurer's liability are liberally construed in favor of coverage, but only when they are ambiguous, or susceptible to more than one reasonable interpretation.

*Clarendon Nat'l Ins. Co. v. Medina*, 645 F.3d 928, 933 (7th Cir. 2011) (citations omitted). Although ambiguities are construed in the insured's favor, "a court will not search for ambiguity where there is none." *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 860 N.E.2d 307, 314 (Ill. 2006); *see also Native Am. Arts, Inc. v. Hartford Cas. Ins. Co.*, 435 F.3d 729, 732 (7th Cir. 2006). "[I]n construing a policy, governing legal authority must … be taken into account as well, for a policy term may be considered unambiguous where it has acquired an established legal meaning." *Ace Am. Ins. Co. v. RC2 Corp.*, 600 F.3d 763, 766 (7th Cir. 2010) (internal quotation marks omitted). "Insurers have the burden of proving that an exclusion applies. Insureds, in turn, have the burden to prove that an exception to an exclusion restores coverage." *Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*, 611 F.3d 339, 347 (7th Cir. 2010) (citation omitted).

"To determine whether an insurer has a duty to defend its insured, [the court] compare[s] the factual allegations of the underlying complaint … to the language of the insurance policy. If the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage, the insurer's duty to defend arises." *Amerisure Mut. Ins. Co. v. Microplastics, Inc.*,

622 F.3d 806, 810 (7th Cir. 2010) (citations and internal quotation marks omitted). An insurer may decline to defend a lawsuit only when "it is clear from the face of the underlying complaint that the allegations set forth … fail to state facts to bring a case within, or potentially within, the coverage of the policy." *Swiderski Elecs.*, 860 N.E.2d at 315; *see also Lyerla v. AMCO Ins. Co.*, 536 F.3d 684, 688 (7th Cir. 2008). That is, "an insurer has no duty to defend unless the underlying claim contains explicit factual allegations that potentially fall within policy coverage." *Microplastics*, 622 F.3d at 810. "Both the policy terms and the allegations in the underlying complaint are liberally construed in favor of the insured, and any doubts and ambiguities are resolved against the insurer." *Id*. at 811 (internal quotation marks omitted). The insurer has a duty to defend "even if only one of several theories of recovery alleged in the complaint falls within the potential coverage," and even if some or all of the allegations in the underlying complaint are "groundless, false, or fraudulent." *Swiderski Elecs.*, 860 N.E.2d at 315.

Consolidated's policy is a standard commercial general liability ("CGL") policy. Doc. 64-4. It provides coverage for "property damage" caused by an "occurrence" during the "policy period." *Id*. at 8. The policy defines "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property" or "[l]oss of use of tangible property that is not physically injured." *Id*. at 23. The policy defines "occurrence" as "an accident, including continuous and repeated exposure to substantially the same general harmful conditions." *Id*. at 22. Although the policy does not define "accident," Illinois courts understand the term to mean "an unforeseen occurrence, usually of an untoward or disastrous character or an undesigned, sudden, or unexpected event of an inflictive or unfortunate character." *Lyerla*, 536 F.3d at 688-89 (internal quotation marks omitted).

The rules governing application of these CGL policy provisions in the context of construction defect suits are settled. Where the underlying suit alleges damage to the construction project *itself* due to a construction defect, there is no coverage; by contrast, where the underlying suit alleges that the construction defect damaged something *other* than the project itself, there is coverage. *See id*. at 689 ("Illinois courts have reasoned that damage to a construction project resulting from construction defects is not an 'accident' or 'occurrence' because it represents the natural and ordinary consequences of faulty construction"; *Milwaukee Mut. Ins. Co. v. J.P. Larsen, Inc.*, __ N.E.2d __, 2011 WL 3612281, at *6-7 (Ill. App. Aug. 15, 2011); *CMK Dev. Corp. v. West Bend Mut. Ins. Co.*, 917 N.E.2d 1155, 1164-66 (Ill. App. 2009); *Viking Constr. Mgmt., Inc. v. Liberty Mut. Ins. Co.*, 831 N.E.2d 1, 10-18 (Ill. App. 2005) (Burke, J.); *Monticello Ins. Co. v. Wil-Freds Constr., Inc.*, 661 N.E.2d 451, 455-57 (Ill. App. 1996); *see generally Microplastics*, 622 F.3d at 811-13; *Wausau Underwriters Ins. Co. v. United Plastics Grp., Inc.*, 512 F.3d 953, 956-58 (7th Cir. 2008). As the Appellate Court of Illinois noted in surveying the decided cases, there is coverage where the underlying suit alleges that a construction defect caused damage to "a homeowner's furniture, clothing and antiques," "cars in the parking garage built by the insured," and "carpets, upholstery, [and] drapery in schools constructed by the insured," but there is no coverage where the underlying suit alleges that a construction defect caused "a sag in the house, a leak and cracks in the footing and walls," "water damage to the basement, damaged concrete work, and cracked floors," or "collapse of a masonry wall, due to inadequate bracing." *CMK Dev.*, 917 N.E.2d at 1164 (internal quotation marks and citations omitted, first and third sets of brackets in original).

In *Wil-Freds Construction*, for example, the underlying complaint alleged "water damage to the lobby of the office building and basement underneath the lobby; [and] interior water

damage caused by water penetration of the roof." 661 N.E.2d at 452. The court observed that if the underlying plaintiff "had sued [the contractor] for the water damage suffered by cars in the parking garage, … there can be little doubt that [the insurer] would be required to defend [the contractor] under the CGL policy, because there would have been negligent manufacture that results in 'an occurrence.'" *Id*. at 457 (internal quotation marks omitted). However, because the underlying plaintiff alleged only damage "to the project itself," the court held that "no coverage exists." *Ibid*. (citing *Hamilton Die Cast, Inc. v. U.S. Fidelity & Guar. Co.*, 508 F.2d 417, 420 (7th Cir. 1975)) (internal quotation marks omitted).

Crown's state court complaint brings four claim against Lagestee: (1) breach of construction contract; (2) breach of contractor's warranty for materials, equipment and construction services; (3) breach of contractor's call back warranty; and (4) breach of contractor's call back warranty after completion. Doc. 64-8. It does not matter that Crown's claims all sound in contract. Under Illinois law, "[t]he insured's coverage and right to a defense depend not on the legal theories stated by the claimant in the underlying dispute, but on the factual allegations." *Microplastics*, 622 F.3d at 815. The suggestion "that the [underlying] complaint must explicitly identify the *claim* that is within the [policy] coverage represents an unduly narrow reading of Illinois law, and the court should not simply look to the particular legal theories pursued by the claimant, but must focus on the … *conduct* on which the lawsuit is based." *Id*. at 815-16 (internal quotation marks omitted, second set of brackets in original).

The "conduct" alleged in Crown's complaint concerns various alleged deficiencies in materials Lagestee used during construction, various alleged shortcomings in Lagestee's workmanship, and various alleged defects in the building as constructed. Doc. 64-8 at ¶¶ 41-43,

51, 61, 69-72. To support is position on coverage, Lagestee points to Crown's allegations regarding water infiltration:

> 15. CROWN began to experience water infiltration problems at numerous wall locations during the later stages of construction of the Crown Centre.
>
> 16. CROWN … and [Lagestee] began an investigation of certain defective conditions of the Crown Centre which included but was not limited to attempting to correct the water infiltration problems.
>
> \* \* \*
>
> 60. CROWN discovered the defects in the work which included but is not limited to water infiltration into the Crown Centre before substantial completion of [Lagestee's] work at the Project.

Doc. 64-8 at ¶¶ 15-16, 60. According Lagestee, these allegations create the possibility of coverage, thus triggering Consolidated's duty to defend:

> [Crown] clearly alleged that water had infiltrated the building. The policy defines "property damage" as "physical injury to tangible property …." Under Illinois law, "tangible property suffers a 'physical' injury when the property is altered in appearance, shape, color or in other material dimension." Water infiltration alters tangible property in such ways. At a minimum, the pleadings leave open the possibility of coverage.

Doc. 65 at 6 (citations omitted, ellipses in original).

The dispositive question under Illinois law is whether Crown's complaint alleges water damage to anything other than the building itself. It does not. Although the complaint alleges "water infiltration," it makes no reference to the kind of damage (if any) caused by the infiltration. Lagestee maintains that an attachment to Crown's interrogatory answers in state court "clarif[ies] that water was infiltrating into the building at the windows and doors." Doc. 64 at ¶ 15. But the attachment—a letter from an expert hired by Crown to identify problems with Lagestee's work—merely confirms that the building was susceptible to water leakage, and does not identify anything that actually suffered water damage. Doc. 64-9 at 13-15.

It is true that the underlying complaint does not *disavow* the proposition that the water infiltration damaged something other than the building itself. However, the mere possibility that such damage occurred does not trigger a duty to defend under Illinois law. The Seventh Circuit made this point clear in *Microplastics*. The insured, a company called Microplastics, manufactured "insert molding components, which are plastic pieces used to manufacture various mechanical devices." 622 F.3d at 808. Microplastics sold the components to Valeo, which "used them to manufacture automobile door latch assemblies that [Valeo] sold to automobile manufacturers." *Ibid*. Litigation ensued, with Valeo alleging that Microplastics' components were defective; Valeo claimed that "Microplastics is liable to Valeo for the costs charged to Valeo associated with the defects," but did not specify the nature of the defects. *Id*. at 811. Microplastics tendered its defense to Amerisure, citing the "property damage" provision in its policy; Amerisure declined coverage and sought a declaration of non-coverage. *Id*. at 809-10.

The Seventh Circuit framed the issue as follows: "The problem presented here is whether the insurer has a duty to defend the insured when the unhappy buyer makes only general allegations for costs incurred as a result of the defective products, without explicitly disavowing any claim for damage to property other than the defective products themselves." *Id*. at 808. Put another way, because Valeo's "general allegations d[id] not logically foreclose the theoretical possibility that … property beyond the defective products" had been damaged, the question was whether that "theoretical possibility [was] enough to trigger the duty to defend under a CGL policy." *Id*. at 811-12. Microplastics answered the question "yes," noting that the "costs" sought by Valeo might arise from circumstances where Microplastics' parts "caus[ed] the [car] buyers' property in trunks to spill onto the roadways" or "allowed water to leak into the passenger or trunk areas, causing damage to property stored in the vehicles." *Id*. at 812. The

Seventh Circuit disagreed, explaining that "[t]he duty to defend applies only to facts that are explicitly alleged; it is the actual complaint, not some hypothetical version, that must be considered." *Ibid*. (internal quotation marks omitted). Because Valeo's claims "made no specific allegation of 'property damage'" and "did not allege, or even suggest, that [Valeo's costs] have any relation to 'property damage,'" and because the record contained "no support … for Microplastics' theory that [Valeo's] costs are related to damage to consumers' personal property," the court held that Amerisure had no duty to defend. *Id*. at 812-13. The Seventh Circuit concluded: "While we are required to construe the underlying claim liberally and to resolve doubts in favor of coverage for the insured, we are not permitted simply to speculate about possible factual scenarios that are absent from the claim itself." *Id*. at 814 (internal citation omitted). The same result obtains here.

Lagestee offers an alternative argument, contending that because Consolidated accepted Frontrunner's tender of its defense against Lagestee's third-party claims, and because Lagestee's third-party claims were derivative of Crown's claims against Lagestee, Consolidated was obligated to defend Lagestee. Lagestee supports its submission with internal Consolidated emails reflecting Consolidated's conclusion that Lagestee's third-party claims alleged property damage, and also with excerpts from the depositions of the email correspondents, who stood by their view that Frontrunner was owed a defense.

One might think that Lagestee is arguing estoppel—that Consolidated, having decided that Lagestee's third-party claims against Frontrunner alleged property damage, is estopped from disputing that Crown's claims against Lagestee did so as well. But Lagestee makes clear that this is not its argument. Doc. 73 at 3 ("Another red herring is Consolidated's contention that just because it defended and indemnified Frontrunner, it is not estopped from denying coverage for

Lagestee-Mulder. But that is not Lagestee-Mulder's theory."). Lagestee instead argues that an insurer's "duty of good faith" means that "it cannot treat claims from an additional insured different than claims from an insured, absent a valid reason." Doc. 68 at 5. The two cases that Lagestee cites for this proposition do not support it. The first, *Great Lakes Dredge & Dock Co. v. Commercial Union Assurance Co.*, 2002 WL 31133095 (N.D. Ill. Aug. 19, 2002), mentions in passing the court's "*assumption* that an insurer carrying out its contractual responsibilities in good faith would have treated its named insured and additional insured equally," *id*. at *1 (emphasis added); this was an assumption only, and no Illinois law was cited. The cited portion of the second case, *UNR Indus., Inc. v. Am. Mut. Liab. Ins. Co.*, 92 B.R. 319, 336 (N.D. Ill. 1988), does not mention additional insureds at all.

In any event, Consolidated has articulated a valid reason for accepting Frontrunner's tender but not Lagestee's. Doc. 72 at 10. As shown above, allegations of property damage in a construction defect case trigger an insurer's duty to defend so long as the damaged property is something other than what the insured was responsible for building. Consolidated points out that Lagestee, as the contractor, was responsible for the *whole* building, and that there was no indication that water infiltration had damaged anything other than the building. Frontrunner, by contrast, was a subcontractor whose responsibilities were limited to the building's windows and doors. Consolidated reasonably could have concluded that its insureds' different scopes of work warranted disparate responses to their tenders: While water damage to parts of the building other than the windows and doors did not qualify as "property damage" as far as Lagestee was concerned, such damage fell outside the scope of Frontrunner's subcontractor work and thus qualified as "property damage" as far as Frontrunner was concerned.

Lagestee would not prevail even if Consolidated had no reason for the differential treatment. Because Consolidated had no duty to defend Lagestee as a matter of law, if Frontrunner and Lagestee were identically situated, that would mean only that Consolidated provided Frontrunner with a gratuity, defending it in *Crown Centre* absent any legal obligation to do so. The duty of good faith imposed on insurers did not require Consolidated to extend to Lagestee the same gratuity it provided to Frontrunner. *See Pekin Ins. Co. v. Home Ins. Co.*, 479 N.E.2d 1078, 1080 (Ill. App. 1985) ("a bad faith claim" lies only "when an insured has acted in a vexatious, unreasonable, or outrageous manner towards its insured parties"). To the contrary, as Lagestee itself repeatedly argued, "[a]ll that matters is whether, based upon the allegations of the underlying pleadings, there was a potential that the 'property damage' occurred." Doc. 68 at 6; *see also id*. at 4 ("the only analysis this Court must undertake is whether there was the potential of coverage … based on the underlying pleadings"); *ibid*. ("The only issue is whether the duty to defend existed … , based on the allegations in the underlying pleadings."); *id*. at 7 ("All that is relevant is what was alleged, or not alleged."); Doc. 73 at 5 ("The only relevant question is whether the underlying pleadings precluded the possibility of coverage."). Comparing the *Crown Centre* pleadings to the Consolidated policy through the lens of Illinois law yields the conclusion that there was no potential for coverage of Crown's claims against Lagestee, and thus no duty to defend.

One final note before closing. Earlier in this litigation, the court allowed Lagestee to conduct discovery regarding Consolidated's decision to accept Frontrunner's tender. 2010 WL 4781461 (N.D. Ill. Nov. 17, 2010). Consolidated objected to the discovery on relevance grounds, arguing that "its acceptance of Frontrunner's tender is irrelevant to its denial of

Lagestee-Mulder's tender because the validity of each decision is measured solely by the policy's terms." *Id*. at *2. The court responded as follows:

> Consolidated's submission ultimately may carry the day, but at this point the court cannot foreclose the possibility that the Frontrunner decision could bear on the validity of the Lagestee-Mulder decision. Perhaps, for example, Consolidated's denial of Lagestee-Mulder's tender turned on a policy provision that is ambiguous, and perhaps Consolidated interpreted that provision differently when deciding to accept Frontrunner's tender. Lagestee-Mulder is entitled to explore these issues in discovery, and the only way to do so is by allowing it access to documents and information regarding Consolidated's decision to accept Frontrunner's tender.

*Ibid*. (internal citations omitted). Having had the opportunity to take that discovery, Lagestee has not argued that Consolidated's differential treatment of Lagestee and Frontrunner resulted from Consolidated's decision to interpret an ambiguous policy term against Lagestee and in favor of Frontrunner; nor has Lagestee put forth any evidence indicating that the differential treatment was otherwise improper. The court's coverage analysis, therefore, rests entirely on the terms of the Consolidated policy and the allegations in the *Crown Centre* suit.

To summarize, because Crown's claims against Lagestee in the state court case did not trigger Consolidated's duty to defend, Consolidated's summary judgment motion is granted and Lagestee's summary judgment motion is denied.

November 8, 2011

_____
United States District Judge